**Rodney GORDON, Appellant,**

v.

**WEST HOUSTON TREES, LTD., Appellee.**

No. 01–09–00269–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 28, 2011.

---

Marcellous S. McZeal, Grealish & McZeal, LLP, Houston, TX, for Appellant.

Russell C. Jones, The Holloway Jones Law Firm, P.L.L.C., Sugar Land, TX, for Appellee.

Panel consists of Justices KEYES, HIGLEY, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Rodney Gordon, appeals from the summary judgment granted by the trial court in favor of appellee, West Houston Trees, Ltd. In one point of error, Gordon argues that the trial court erred in granting summary judgment.

We affirm.

## Background

On July 14, 2006, West Houston Trees obtained a money judgment against Gordon's father, Winter Gordon, Sr. At the time, Gordon's father owned a tract of land in Fort Bend County, the ownership of which is the subject of this lawsuit. On July 24, 2006, West Houston Trees obtained an abstract of judgment and filed it in the Fort Bend County property records, creating a judgment lien on all of Winter Gordon's real property in Fort Bend Coun-

ty. On February 9, 2007, it obtained an Order of Sale on the property.

On March 22, 2007, Gordon filed in the Fort Bend County property records a "Purchase and Sale Agreement," dated that day, which Gordon asserts conveyed the relevant property to him.

West Houston Trees obtained a writ of execution on the judgment, and, on April 3, 2007, the Fort Bend County Constable conducted a constable's sale of the property (the "Execution Sale"). West Houston Trees purchased the property, which is described in a "Deed under Execution," executed on April 20, 2007, and filed by West Houston Trees in the Fort Bend County property records on June 27, 2007.

On October 3, 2007, Gordon filed a document entitled "Quit Claim Deed" in the Fort Bend County property records. By its terms, the Quit Claim Deed conveyed Gordon's interest in the property to himself as Trustee of the Rodney J. Gordon Trust.

On January 23, 2008, Gordon filed in the Fort Bend County property records an "Amended Warranty Deed," backdated to March 22, 2007, the date of the Sale Agreement. The Amended Warranty Deed was signed by Gordon and his father, and purported to correct errors in the March 22 Purchase and Sale Agreement. No original warranty deed was filed and there is no evidence that one ever existed.

On the same day that the Amended Warranty Deed was filed, Gordon filed a suit for wrongful foreclosure against West Houston Trees, claiming that West Houston Trees' abstract of judgment was invalid and that the sale of the relevant property from his father to himself was valid and properly conveyed title to the property to him. West Houston Trees answered with a general denial, asserted various affirmative defenses, and asserted three counterclaims

and cross-claims against Gordon and the Rodney J. Gordon Trust: (1) an action for declaratory relief asserting its superior right to the property over Gordon; (2) a suit to quiet title; and (3) a claim for affirmative relief against Gordon for filing a fraudulent document against real property in violation of Civil Practice and Remedies Code Chapter 12. It sought a declaration of its rights and attorney's fees pursuant to the Declaratory Judgments Act; the greater of actual damages or statutory damages pursuant to Civil Practice and Remedies Code section 12.002 for Gordon's filing of a fraudulent document; and costs.

Subsequently, West Houston Trees sought summary judgment on all of the claims and affirmative defenses before the trial court. It argued that it was entitled to summary judgment on Gordon's wrongful foreclosure action because the abstract of judgment it filed was valid, established superior title to the property, and gave notice to subsequent purchasers such as Gordon. It further argued that proper foreclosure procedures were followed and that, therefore, its Execution Deed, obtained upon its purchase of the property at the Execution Sale and recorded in the Fort Bend County property records, was valid. Therefore, the instruments filed by Gordon in the Fort Bend County records constitute invalid hindrances, or clouds on its title. West Houston Trees further argued that these instruments were invalid and fraudulent and failed to convey a valid interest in the property. It contended that there was no language of conveyance in the Sale Agreement; that the Sale Agreement was an executory contract that did not convey title to the property; and that the description of the property in the instruments filed by Gordon was insufficient to identify the land on the ground. Following a hearing, the trial court· ren-

dered summary judgment on all of the grounds asserted in the motion.

Gordon asserts, in a single point of error on appeal, that the trial court erred in granting West Houston Trees' motion for summary judgment. He argues in seven sub-issues that West Houston Trees was not entitled to summary judgment because (1) West Houston Trees' abstract of judgment was invalid as a matter of law; (2) the recording and indexing of an abstract of judgment will not perfect or create a lien on the judgment debtor's real property when the cause number is omitted, as happened in this case; thus, (3) West Houston Trees' improperly filed abstract did not satisfy the statutory requirements to create a lien against the property; (4) Gordon, did not file a fraudulent document on the property; (5) West Houston Trees' suit to quiet title is without merit because the property was sold to and recorded by Gordon before the property was sold at the Execution Sale to West Houston Trees and the Execution Deed executed and recorded; (6) the Purchase and Sale Agreement executed by his father and himself and filed in the Fort Bend County property records contained the proper language of conveyance; and (7) the property descriptions in the instruments he filed in the Fort Bend County records were sufficient to identify the property.

## Standard of Review

To prevail on a traditional summary judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex.2004). A party moving for summary judgment on one of its own claims must conclusively prove all essential elements of the claim. *See Rhone–Poulenc, Inc. v.*

*Steel*, 997 S.W.2d 217, 223 (Tex.1999). A defendant may also prevail by traditional summary judgment if it conclusively negates at least one essential element of a plaintiff's claim or conclusively proves an affirmative defense. *See IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004). A movant seeking traditional summary judgment on an affirmative defense has the initial burden of establishing its entitlement to judgment as a matter of law by conclusively establishing each element of its affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex.2008) (per curiam); *see also* TEX.R. CIV. P. 166a(b)-(c). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005).

If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex.2007) (per curiam).

On appeal, we review de novo a trial court's summary judgment ruling. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In our review, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006).

### West Houston Trees' Summary Judgment

West Houston Trees sought and was awarded summary judgment on Gordon's wrongful foreclosure suit and on its own suit to quiet title and fraudulent document claims.[1]

### A. "Wrongful Foreclosure"

In his first, second, third, and fifth sub-issues, Gordon argues that the abstract of judgment filed by West Houston Trees in the Fort Bend County property records on July 24, 2006 did not attach and failed to give notice of a valid lien to subsequent purchasers of the property, such as himself. Therefore, his title to the property, which was recorded on March 22, 2007, was superior to West Houston Trees' title, obtained at the April 3, 2007 Execution Sale.

■ Filing and recording an abstract of judgment creates a judgment lien as to a judgment debtor's real property. *Won v. Fernandez*, 324 S.W.3d 833, 834–35 (Tex. App.-Houston [14th Dist.] 2010, no pet.); *Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 193–94 (Tex.App.-Houston [1st Dist.] 2008, pet. denied).

■ In order to obtain a lien on a judgment, the judgment creditor must comply with the statutory requirements for creation of the lien. Tex. Prop.Code Ann. §§ 52.001–52.007 (Vernon 2007 & Supp. 2010). The first step in creating a lien on a judgment is to obtain an abstract of the judgment. *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex.App.-Dallas 1988, writ denied). The purpose of an abstract of judgment is (1) to create a

judgment lien in the first place and (2) to provide notice to subsequent purchasers of that lien's existence. *Holub*, 264 S.W.3d at 194.

An abstract of judgment must show:

(1) the names of the plaintiff and defendant;

(2) the birthdate of the defendant, if available to the clerk or justice;

(3) the last three numbers of the driver's license of the defendant, if available;

(4) the last three numbers of the social security number of the defendant, if available;

(5) the number of the suit in which the judgment was rendered;

(6) the defendant's address, or if the address is not shown in the suit, the nature of citation and the date and place of service of citation;

(7) the date on which the judgment was rendered;

(8) the amount for which the judgment was rendered and the balance due;

(9) the amount of the balance due, if any, for child support arrearage; and

(10) the rate of interest specified in the judgment.

Tex. Prop.Code Ann. § 52.003(a) (Vernon Supp.2010).

■ The clerk of the court in which the judgment was rendered typically prepares the abstract of judgment. *Id.* § 52.002(a) (Vernon 2007). It is the judgment creditor's responsibility, however, to ensure that the clerk abstracts the judgment properly. *Rogers v. Peeler*, 271 S.W.3d 372, 375 (Tex.App.-Texarkana

---

1. When an action for declaratory relief and a suit to quiet title are based on the same facts and request similar relief, they are both treated as one suit to quiet title. *Sw. Guar. Trust*

*Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

2008, pet. denied). Because a judgment lien is created by statute, substantial compliance with the statutory requirements is mandatory before the lien will attach. *Holub*, 264 S.W.3d at 193. Substantial compliance allows for a minor deficiency in a required element of the abstract of judgment but does not allow for the complete omission of a required element. *Id.* at 193–94.

If the abstract of judgment does not substantially comply with the statutory requirements, no lien is created regardless of whether the other party has actual knowledge of the abstract or the underlying judgment. *Id.* at 194. If an abstract of judgment substantially complies with the statutory requirements and the other statutory formalities are followed for filing the abstract, then a lien is created that is superior to the rights of subsequent purchasers and lienholders. *Rogers*, 271 S.W.3d at 375.

When a lien is properly filed in the property records of a county, the lien attaches to any real property of the defendant in that county. TEX. PROP.CODE ANN. § 52.001 (Vernon Supp.2010). "Generally, the earlier title emanating from a common source is better title and superior to others." *Diversified, Inc. v. Hall*, 23 S.W.3d 403, 406 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). Thus, "[w]hen properly recorded and indexed, an abstract of judgment creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders." *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex.App.-San Antonio 2007, pet. denied). Accordingly, if a judgment lien is properly attached to property, a subsequent purchaser of the property purchases it subject to the judgment lien. *W. Trinity Props., Ltd. v. Chase Manhattan Mortg. Corp.*, 92 S.W.3d 866, 870 (Tex. App.-Texarkana 2002, no pet.) (holding subsequent purchaser takes property subject to prior lien).

A judgment-holder can foreclose on a judgment lien either through an independent suit or through an execution sale. *Won*, 324 S.W.3d at 835 n. 2. Execution is a method of enforcing a judgment by which a judgment creditor obtains from a court a writ of execution that meets certain requirements and delivers it to a sheriff or constable. *Id.* at 834; *see* TEX.R. CIV. P. 621, 622, 629. If the officer follows all appropriate procedures, the property may be sold to satisfy the judgment. *Won*, 324 S.W.3d at 834; *see* TEX.R. CIV. P. 646a–650.

"A valid judgment, execution, and sale are required to pass title to property at an execution sale." *Clint Indep. Sch. Dist. v. Cash Invs., Inc.*, 970 S.W.2d 535, 537 (Tex.1998); *Won*, 324 S.W.3d at 835. The writ of execution gives the officer authority for the sale of the property, and the levy in the execution process creates an execution lien. *Won*, 324 S.W.3d at 835; *see* TEX.R. CIV. P. 629, 637, 639. The officer levies on the property described in the writ of execution, usually, in the case of real property, by endorsing the writ. *Won*, 324 S.W.3d at 834. "A valid levy of an execution creates a lien on the debtor's property in favor of the judgment creditor." *Id.* (quoting *Tex. Emp'rs Ins. Ass'n v. Engelke*, 790 S.W.2d 93, 95 (Tex. App.-Houston [1st Dist.] 1990, orig. proceeding)).

A judgment lien and an execution lien work together so that "[i]f a judgment creditor obtains a judgment lien and then executes on the judgment, the date of the execution lien relates back to the date of the judgment lien, thereby giving the judgment creditor priority over other creditors with claims arising after the date of the judgment lien." *Id.* at 835 n. 3. When

the property subject to the execution lien is sold, the purchaser obtains an execution deed. *See id.* at 835. The purchaser at the execution sale obtains whatever title the grantor had at that time. *Hall,* 23 S.W.3d at 407.

Gordon argues that the foreclosure and sale of the property to West Houston Trees were wrongful because the abstract of judgment filed by West Houston Trees in the Fort Bend County property records did not meet either of the purposes of an abstract of judgment in that it did not create a judgment lien and did not provide notice to subsequent purchasers of the existence of a valid lien. *See Holub,* 264 S.W.3d at 194. Thus, his own purchase of the property on March 22, 2007 was made free and clear of any liens. He contends that on the date of the Execution Sale, April 3, 2007, his father, the judgment debtor, had no title to convey. Therefore, the Execution Sale was improper and the Execution Deed obtained by West Houston Trees upon its purchase of the property at the Execution Sale and recorded in the Fort Bend County property records is invalid.

We disagree with Gordon's argument.[2]

**1. Failure of West Houston Trees' Abstract to Create a Judgment Lien**

First, Gordon argues that the abstract of judgment does not meet the requirements for creating a judgment lien. *See Holub,* 264 S.W.3d at 194 (holding that one purpose of abstract of judgment is to create judgment lien). The abstract of judgment at issue identifies the cause number for the suit in which the judgment was rendered as "03–CV–10474." The actual cause number for the suit is "03–CV–

130474." An abstract of judgment must show "the number of the suit in which the judgment was rendered." TEX. PROP.CODE ANN. § 52.003(a)(5). West Houston Trees argues that the discrepancy is a minor deficiency in the abstract of judgment and, accordingly, the abstract substantially complied with the statutory requirements for creating an effective lien.

In *San Antonio Loan & Trust Co. v. Davis,* the court of appeals had reversed and rendered the judgment of the trial court in a previous appeal. 235 S.W. 612, 615 (Tex.Civ.App.-San Antonio 1921, no writ). Subsequent to that appeal, the clerk of the trial court prepared an abstract of judgment based on the court of appeals' judgment. *Id.* As a result, the abstract of judgment incorrectly identified the parties, stated the wrong cause number, and stated the wrong name of the court. *Id.* In the second appeal, the court of appeals held that the clerk of the trial court was required to file the mandate issued by the court of appeals "to make it effective as the judgment" of the trial court. *Id.* Because the abstract of judgment incorrectly identified the parties, stated the wrong cause number, and stated the wrong name of the court, it did not substantially comply with the statutory requirements. *Id.* at 617.

In contrast, in *Mullins v. Albertson,* the court held that an abstract of judgment that identified the defendant as G.W. Albertson instead of G.M. Albertson substantially complied with the statutory requirements. 136 S.W.2d 263, 264 (Tex.Civ. App.-San Antonio 1940, writ ref'd). Similarly, misstatement of the date of the judgment that is off by only a few days has

---

**2.** We do not disagree with the dissent's recharacterization of Gordon's suit as a trespass to try title action rather than a true wrongful foreclosure action. *See Martin v. Amerman,* 133 S.W.3d 262, 265 (Tex.2004) (setting out

elements of trespass to try title action); *cf. Sauceda v. GMAC Mortg. Corp.,* 268 S.W.3d 135, 139 (Tex.App.-Corpus Christi 2008, no pet.) (setting out elements of wrongful foreclosure).

been held to substantially comply with the statutory requirements. *See Smith v. Adams,* 333 S.W.2d 892, 894 (Tex.Civ.App.-Eastland 1960, writ ref'd n.r.e.) (discrepancy of one day); *Guar. State Bank of Donna v. Marion Cnty. Nat'l Bank,* 293 S.W. 248, 248 (Tex.Civ.App.-San Antonio 1927, no writ) (discrepancy of three days).

This case is closer to *Mullins, Smith,* and *Guaranty State Bank* than to *Davis.* There is one typographical error in the abstract of judgment as opposed to multiple errors. The typographical error states a different cause number with one digit missing from the correct cause number. Because the only error in the required elements for the abstract of judgment is a typographical misprint of the cause number, we hold that the abstract of judgment substantially complies with the requirements of section 52.003.

### 2. *Failure of West Houston Trees' abstract to give notice to subsequent purchasers*

 Second, Gordon argues that the abstract of judgment does not provide notice to subsequent purchasers of the lien's existence. *See Holub,* 264 S.W.3d at 194 (holding one purpose of abstract of judgment is to provide notice to subsequent purchasers of lien's existence); *see also Wilson,* 228 S.W.3d at 235 (holding abstract of judgment that meets statutory requirements can still fail to provide sufficient notice). To be effective, a lien must be recorded in the real property records for the county in which the property to which the lien is to be attached is located. TEX. PROP.CODE ANN. § 52.004 (Vernon 2007); *see also Citizens State Bank of Clarinda, Iowa v. Del–Tex Inv. Co.,* 123 S.W.2d 450, 452 (Tex.Civ.App.-San Antonio 1938, writ dism'd judgm't cor.) (holding object of statutory requirements for abstract of judgment and recordation is to put subsequent purchasers on notice of lien thereby created). The cause number of the underlying judgment is not used in the recordation or indexing of the lien in the real property records. *See* TEX. PROP. CODE ANN. § 52.004. Accordingly, any typographical error in the cause number does not affect the abstract of judgment's ability to put subsequent purchasers on notice of the lien's existence.

We hold that Gordon has failed to show that the Execution Sale was invalid because West Houston Trees' judgment lien failed to attach and give notice of the existence of a valid lien to subsequent purchasers. We further hold that the abstract satisfied the requirements of Property Code section 52.003 and that the judgment lien was properly recorded in the Fort Bend County property records, creating a lien superior to the rights of subsequent purchasers and lien holders. *See Wilson,* 228 S.W.3d at 233. Gordon makes no argument and has presented no evidence that the Execution Sale was otherwise improper. We hold, therefore, that the property was properly levied upon and that the execution lien created in favor of West Houston Trees related back to July 24, 2006, the date of West Houston Trees' judgment lien, giving it priority over subsequent purchasers. *See Won,* 324 S.W.3d at 835 n. 3; *Wilson,* 228 S.W.3d at 233. Therefore, the Execution Deed obtained by West Houston Trees and recorded in the Fort Bend County property records following its purchase of the property at the Execution Sale properly reflected transfer of title from Gordon's father, the owner of the property on the date the judgment lien attached, to West Houston Trees. *See Hall,* 23 S.W.3d at 407.

We overrule Gordon's first, second, third, and part of his fifth sub-issues.

### B. **West Houston Trees' Suit to Quiet Title**

In part of his fifth sub-issue and in his sixth and seventh sub-issues, Gordon ar-

gues that West Houston Trees' suit to quiet title fails because he has title superior to West Houston Trees'.

West Houston Trees' suit to quiet title asserts that the sale of the property from Gordon's father to Gordon is a hindrance that creates "the appearance of a better right" in Gordon than in West Houston Trees and that is, in fact, invalid. *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.). It argues that its judgment lien was validly created prior to the purported conveyance of the property to Gordon; that the Purchase and Sale Agreement, whereby Gordon's father purported to convey the property to Gordon prior to the Execution Sale, failed to convey title to the land; that the land was properly conveyed to it at the Execution Sale and its Execution Deed is valid; and, therefore, Gordon's filings in the Fort Bend County property records constitute invalid hindrances on its title.

■■■■■ A suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property—here, Gordon. *See Longoria v. Lasater*, 292 S.W.3d 156, 165 n. 7 (Tex.App.-San Antonio 2009, pet. denied). It exists "to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell*, 606 S.W.2d at 952 (quoting *Thomson v. Locke*, 66 Tex. 383, 1 S.W. 112, 115 (1886)); *see also Hahn v. Love*, 321 S.W.3d 517, 531 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) (quoting *Bell*, 606 S.W.2d at 952). A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property. *Hahn*, 321 S.W.3d at 531. The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title. *See id.* (holding

plaintiff bears burden of establishing that adverse claim is cloud on title that equity will remove); *Bell*, 606 S.W.2d at 952 (holding quiet title action enables holder of feeblest equity to remove unlawful hindrance). Accordingly, West Houston Trees' suit to quiet title depends on its establishing that the claim asserted by Gordon (1) constitutes a hindrance having the appearance of a better right to title than its own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *See Hahn*, 321 S.W.3d at 531; *Bell*, 606 S.W.2d at 952.

### 1. The March 22, 2007 Purchase and Sale Agreement

■■■■■ We have held that West Houston Trees had superior rights in the property on the date of the Execution Sale, that the sale of the property to it was proper, and that it is the owner of the property under the Execution Deed, which was properly recorded in the Fort Bend County property records. Therefore, the Purchase and Sale Agreement, which appears to record a valid earlier purchase of the property by Gordon, is invalid for reasons not apparent on its face and constitutes a hindrance on West Houston Trees' title which West Houston Trees is entitled to have removed. *See Hahn*, 321 S.W.3d at 531; *Bell*, 606 S.W.2d at 952.

However, even if West Houston Trees was not entitled to removal of the cloud on its title by virtue of its superior right to the property under its judgment lien, we would still hold that the instruments filed by Gordon in the Fort Bend County property records did not record valid conveyances of the property, that no title passed to Gordon or to the Gordon Trust, and that West Houston Trees' Execution Deed is valid and it is therefore entitled to the removal of each of these instruments from its chain of title as invalid hindrances.

To validly convey an interest in land, a contract for the sale of real estate must satisfy the requirements of both the statute of conveyances, Property Code section 5.021, and the statute of frauds, Business and Commerce Code section 26.001. To be enforceable and comply with the statute of frauds, a contract for the sale of real property must be in writing and signed by the person to be charged with the agreement. Tex. Bus. & Com.Code Ann. § 26.01(a), (b)(4) (Vernon 2009); *Cate v. Woods,* 299 S.W.3d 149, 152 (Tex.App.-Texarkana 2009, no pet.). To convey an interest in land under the statute of conveyances, the instrument of conveyance must be in writing, must be signed, and must be delivered by the party disposing of his interest. Tex. Prop.Code Ann. § 5.021 (Vernon 2004); *Thompson v. Clayton,* 346 S.W.3d 650, 656 (Tex.App.-El Paso 2009, no pet.); *McDaniel v. Carruth,* 637 S.W.2d 498, 505 (Tex.App.-Corpus Christi 1982, no pet.).

In essence, the instrument conveying the land must contain the essential characteristics of a deed. *See* Tex. Prop.Code Ann. § 5.021; *see Green v. Canon,* 33 S.W.3d 855, 858 (Tex. App.-Houston [14th Dist.] 2000, pet. denied). There is, however, no longer a requirement that a deed or instrument to effect the conveyance of real property must have all the formal parts of a deed recognized at common law or technical language. *Green,* 33 S.W.3d at 858; *see also Marrs & Smith, P'ship, v. D.K. Boyd Oil & Gas Co.,* No. 08–00–00386–CV, 2002 WL 1445334, at *5 (Tex.App.-El Paso July 3, 2002, no pet.) (not designated for publication). Rather, if (1) from the instrument as a whole a grantor and grantee can be ascertained and (2) there are operative words or words of grant showing an intention by the grantor to convey to the grantee title to a real property interest, (3) which is suffi-ciently described, and (4) the instrument is signed and acknowledged by the grantor, then the instrument of conveyance is a deed that accomplishes a legally effective conveyance. *Green,* 33 S.W.3d at 858; *Marrs & Smith,* 2002 WL 1445334, at *5.

The construction of an unambiguous deed is a question of law for the court, and the primary duty of the court in construing a deed is to ascertain the intent of the parties from all of the language in the deed within the four corners of the instrument. *Luckel v. White,* 819 S.W.2d 459, 461 (Tex.1991); *CenterPoint Energy Houston Elec., L.L.P. v. Old TJC Co.,* 177 S.W.3d 425, 430 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). The court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Luckel,* 819 S.W.2d at 462; *CenterPoint Energy,* 177 S.W.3d at 430. Extrinsic evidence of intent is admissible only when an ambiguity appears on the face of the deed, in a suit for reformation, or when a party alleges fraud, accident, or mistake. *CenterPoint Energy,* 177 S.W.3d at 430. Whether a contract is ambiguous is likewise a question of law. *Id.* If a written contract or deed is worded in such a way that it can be given a definite or certain legal meaning, then the contract is not ambiguous. *Id.* at 430–31; *Marrs & Smith,* 2002 WL 1445334, at *5. If the deed language is susceptible to a single meaning, the court is confined to the writing. *Marrs & Smith,* 2002 WL 1445334, at *5; *Cherokee Water Co. v. Freeman,* 33 S.W.3d 349, 353 (Tex.App.-Texarkana 2000, no pet.).

Language in an instrument that contemplates future action is not language that contemplates a completed transaction in land. *See Green,* 33 S.W.3d at 859 (holding attempted gift of land invalid where contemplated future action evidenced "an intent to make a gift in the

future rather than a completed gift"); *see also Marrs & Smith*, 2002 WL 1445334, at *6 (finding that agreement purportedly conveying interest in land did not evidence present intent on part of alleged grantor to convey interest in land where agreement contemplated obligation to convey interest upon occurrence of specific future event).

Here, the Purchase and Sale Agreement (or the "Agreement") was executed by both Gordon and his father on March 22, 2007. It purported to convey "unimproved real property commonly known as 0 POOL HILL RD. REAR, FULSHEAR, TEXAS, located in the City of FULSHEAR, County of FORT BEND, State of TEXAS," and was further described in Section 1 as "0081 J SAN PIERRE, TRACT 7, ACRES 21.3030 Fort Bend County." The Agreement set out a purchase price of $21,000 and acknowledged receipt of a deposit of $2,000, which, it stated, "will be applied to the purchase price at closing." The Agreement then stated:

Section 3. DEED. Upon execution of this Agreement, Seller will convey the Property by a good and sufficient Warranty deed conveying a good and marketable title, free of all liens and encumbrances, except (i) all easements, rights of way, covenants and restrictions of record, (ii) current and future real estate taxes and assignments, (ii) zoning and other governmental laws and regulations, provided none of the foregoing interfere with the continued use of the Property for its present use. Seller, at is sole cost, shall furnish Buyer with a preliminary report or abstract of title from a reputable title company as soon as possible after the execution of this Agreement.

The Agreement also stated, "The deed will be delivered on March 22, 2007 and the purchase price will be paid in full on or by October 31, 2007." It further stated, "At the closing, Seller and Buyer agree to execute and deliver to the other all instruments required by law or which may reasonably be requested by the other party or the closing agent."

We conclude that the Agreement, by its plain language, fails to demonstrate a present intent of the parties to convey title to the property from Gordon's father to Gordon. Rather, the express language of the Agreement contemplates conveyance of the property "by a good and sufficient Warranty deed conveying a good and marketable title, free of all liens and encumbrances" except those specified in the Agreement. There is no indication in the record that any such deed was in existence or had been drafted, executed, or delivered on or before March 22, 2007. Moreover, the language of the Agreement expresses the clear intent that a number of other future actions be taken prior to completing the conveyance, including a title search, and there is no indication from the documents in the record that these actions were completed prior to March 22, 2007. The Agreement fails to satisfy the requirements of the statute of conveyances that there be operative words of grant showing an intention by Gordon's father to convey title to the property to Gordon by means of the Purchase and Sale Agreement itself. *See Green*, 33 S.W.3d at 859 (holding that language in instrument that contemplates future action is not language which contemplates completed transaction in land); *Marrs & Smith*, 2002 WL 1445334, at *6.

Accordingly, we hold that the Purchase and Sale Agreement does not constitute a valid conveyance of land from Gordon's father to Gordon on March 22, 2007. Because there was no valid prior conveyance of the property from Winter Gordon to Gordon, Winter Gordon was still the owner of the property on the date of the Execution Sale. There is no evidence that the

property was not validly conveyed to West Houston Trees by the Execution Sale, as recorded in the Execution Deed, which was properly filed in the Fort Bend County property records. Therefore, even if West Houston Trees had not had superior title by virtue of the attachment of its judgment lien prior to the April 3, 2007 Execution Sale, we would still hold that the Purchase and Sale Agreement filed in the Fort Bend County property records constitutes an invalid hindrance on West Houston Trees' title to the property and that West Houston Trees is entitled to its removal. *See Hall*, 23 S.W.3d at 407 (holding that purchaser of real property under "constable's deed" takes whatever title seller had); *Won*, 324 S.W.3d at 835 (holding that judgment lien is not prerequisite for execution sale).

## 2. The Quit Claim Deed and the Amended Warranty Deed

 Gordon's claim to the property does not rest exclusively upon the validity of the Purchase and Sale Agreement. He contends that the Amended Warranty Deed, filed in the Fort Bend County property records on January 23, 2008, which purports to correct errors in the March 22, 2007 Purchase and Sale Agreement and is backdated to that date, relates back to the date of the Purchase and Sale Agreement and evinces his ownership of the property from that date, rendering the Execution Sale invalid even if the Purchase and Sale Agreement failed to convey valid title to the property. He further argues that the Quit Claim Deed he filed in the Fort Bend County property records on October 3, 2007, which purports to convey his interest in the property to himself as Trustee of the Rodney J. Gordon Trust, is valid and demonstrates that present title to the property lies in the Trust.

West Houston Trees argues that both instruments constitute invalid hindrances on its title. We agree.

We hold that the Amended Warranty Deed, a purported "correction deed," is invalid because there was no instrument that validly conveyed land—no general warranty deed—which it corrected, and "[i]t is well established under Texas law that a party cannot convey to another a greater interest in a property than it possesses." *CenterPoint Energy*, 177 S.W.3d at 432. We hold that the Quit Claim Deed is invalid because Gordon had no interest in the property to convey to the Rodney J. Gordon Trust in October 2007. *See Hall*, 23 S.W.3d at 407 (stating that "quitclaim deed" conveys any title, interest or claim of grantor, but does not profess that title is valid or contain any warrant or covenants of title; quitclaim deed does not establish title in person holding deed, but merely passes whatever interest grantor has in property).

We hold that West Houston Trees is entitled to judgment removing from its title the hindrances occasioned by Gordon's filing of the Purchase and Sale Agreement, the Amended Warranty Deed, and the Quit Claim Deed. *See Hahn*, 321 S.W.3d at 531; *Bell*, 606 S.W.2d at 952.

We overrule Gordon's sub-issues five, six, and seven.

## C. West Houston Trees' Suit for Filing a Fraudulent Document

 Finally, West Houston Trees brought a claim against Gordon for filing a fraudulent document claiming an interest in real property in violation of Civil Practice and Remedies Code Chapter 12. West Houston Trees moved for summary judgment on this basis as well. The trial court found that there was no genuine issue of material fact as to West Houston Trees' counterclaim for Gordon's filing of a fraudulent document and that West Houston Trees was entitled to summary judgment on its claim; it awarded West Hous-

ton Trees statutory damages in the amount of $10,000. In his fourth issue, Gordon argues that he did not file a fraudulent document on the property.

Section 12.002 of the Civil Practices and Remedies Code provides, in relevant part:

(a) A person may not make, present, or use a document or other record with:

(1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3) intent to cause another person to suffer:

(A) physical injury;

(B) financial injury; or

(C) mental anguish or emotional distress.

. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 12.002(a) (Vernon Supp.2010). A person proving its claim under the statute is entitled to statutory damages of $10,000. *Id.*

 A party asserting a claim under the fraudulent document statute has the burden to prove the requisite elements of the statute. *Aland v. Martin,* 271 S.W.3d 424, 430 (Tex.App.-Dallas 2008, no pet.). Intent to defraud is not susceptible to direct proof; therefore, "it invariably must be proven by circumstantial evidence." *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986).

To be entitled to summary judgment and an award of damages, West Houston Trees had the burden to prove every element of its fraudulent document claim, including (1) that Gordon knew at least one of these documents was a fraudulent claim against real property; (2) that he intended that the purported claim against real property be given the same legal effect as a valid claim against real property; and (3) that he intended thereby to cause financial injury to West Houston Trees. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 12.002(a)(1)-(3).

West Houston Trees presented evidence sufficient to establish as a matter of law that Gordon intended that the documents claiming to convey property be given the same legal effect as a valid conveyance and that he intended thereby to cause West Houston Trees to lose the property it had purchased, to its financial injury. In addition, West Houston Trees presented evidence that raises a fact issue as to whether Gordon knew that his documents were invalid. The Purchase and Sale Agreement, filed after West Houston Trees had filed its abstract of judgment and obtained an order of sale from the court was, by its timing and its terms, clearly intended to remove the property from West Houston Trees' reach. It contemplated future actions, including the provision of an opinion of clear title by a title company and the execution of a general warranty deed. Gordon never showed such a deed to have been in existence at the time of the purported transfer of the property to him on March 22, 2007. Therefore, he failed to show that the Amended Warranty Deed was valid, and, failing to make that showing, he could not show that the subsequent Quit Claim Deed, re-conveying title to land purportedly conveyed to him by the Purchase and Sale Agreement and the Amended Warranty Deed, was valid.

However, the fact that Gordon sued West Houston Trees for wrongful foreclosure and made colorable arguments in support of its claims is some evidence that he did not know that his own filings were fraudulent documents, rather than proper filings intended to properly record the valid sale of the property to him and its further conveyance to the Rodney J. Gordon Trust.

We hold that West Houston Trees has not carried its burden of proving as a matter of law the first element of its fraudulent document claim, namely that Gordon knew that the documents he filed were fraudulent claims against real property that did not evidence valid conveyances. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 12.002(a)(1). Accordingly, we hold that the trial court erred in granting summary judgment on West Houston Trees' claim that Gordon filed fraudulent documents in violation of Civil Practice and Remedies Code section 12.002 and in awarding it $10,000 in statutory damages.

We sustain Gordon's fourth sub-issue.

### Conclusion

We affirm the trial court's summary judgment in favor of West Houston Trees on its motion for summary judgment on Gordon's suit for wrongful foreclosure and on its own suit to quiet title. We reverse the summary judgment in favor of West Houston Trees on its claim against Gordon for filing a fraudulent document in violation of Chapter 12 of the Civil Practice and Remedies Code, and we remand for further proceedings on that claim in accordance with this opinion.

Justice HIGLEY, dissenting in part and concurring in the judgment only in part.