**Opinion issued August 13, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00008-CV

_____

### GEORGE M. BISHOP, Appellant

### V.

### ROBERT G. PATE AND JUDY K. PATE, Appellees

---

**On Appeal from the 434th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 17-DCV-243655**

---

### MEMORANDUM OPINION

In this real property dispute, three parties claimed title to 4.7695 acres of unimproved land ("Property"). Appellees, Robert G. Pate and Judy K. Pate, bought the Property from the Internal Revenue Service in 2017. Shortly after, the trustee of the T. H. Trust sued the Pates, claiming the Trust bought the Property ten years

earlier at a foreclosure sale. No evidence reflected the Trust's alleged purchase until the Trust's attorney, appellant George M. Bishop, recorded a back-dated Substitute Trustee's Deed four months into litigation. Bishop himself then claimed title to the Property through a 2021 Deed of Trust and 2022 Trustee's Deed four years into litigation.

The trial court ultimately (1) granted summary judgment on the Pates' counterclaim to remove cloud from title; (2) declared the Substitute Trustee's Deed, 2021 Deed of Trust, and 2022 Trustee's Deed void; (3) found the Pates held title to the Property; and (4) dismissed all claims against the Pates.

In five issues, Bishop argues that the Pates were not entitled to summary judgment because (1) the Pates needed to bring a trespass to try title claim instead of their claim to remove cloud from title; (2) the Pates lacked standing to bring their claim; (3) a genuine issue of material fact existed as to whether the Pates had an interest in the Property; (4) his objection to an associate judge presiding over the summary judgment proceedings should have been sustained; and (5) he was entitled to a de novo hearing of the associate judge's rulings.

We affirm.

## Background

We draw these facts from the pleadings and summary judgment evidence.

### A.     Bishop conveys the Property to JAB.

In October 2007, Bishop was "the legal and equitable owner and holder of [a] note and debt" secured by the Property. During this time, the debtor defaulted, and Bishop appointed his son, K. M. Bishop, as substitute trustee to prepare for a foreclosure sale. K. M. Bishop was instructed to deliver the debtor a notice of sale, post notice of the sale on the courthouse door, and record a notice of substitute trustee sale with the county clerk at least 21 days before the sale. No notice of substitute trustee sale was recorded, and it is unclear whether a foreclosure sale actually occurred—the sale for which the Trust claimed to be the highest bidder.

Instead, the record reflects that Bishop conveyed the Property to JAB Development Company, a Texas corporation, via a general warranty deed notarized in December 2008 and recorded in the real property records in July 2009.

### B.     The Pates buy the Property from the IRS.

By February 2013, JAB owed $1,967,056.28 in delinquent taxes. The United States placed a lien on all JAB's property and eventually seized the Property for nonpayment of the delinquent taxes. In March 2017, the Pates bought the Property at a public auction for $176,000. After the 180-day redemption period expired, the United States conveyed the Property to the Pates via quitclaim deed. The quitclaim

deed stated that the property conveyed was "the same property described in Warranty Deed from George M. Bishop to JAB . . . ."[1]

## C.    Litigation begins.

In July 2017, the Trust sued the Pates, claiming that it had owned the Property since November 2007 when it purchased it at a foreclosure sale. The Trust asserted claims of trespass to try title and declaratory judgment, alleging that it was the owner of the Property and that the Pates' quitclaim deed from the IRS conveyed no interest. Bishop was the Trust's attorney of record. The Pates denied the Trust's allegations and argued that "no foreclosure deed conveying the property to [the Trust] exists, nor has it ever been filed in the real property records."

Four months after the Trust sued, Bishop recorded a back-dated Substitute Trustee's Deed supporting the Trust's claim to title. The Substitute Trustee's Deed stated, among other things, that K. M. Bishop properly posted the foreclosure in October 2007 and the Trust was the highest bidder at the foreclosure sale. The Substitute Trustee's Deed was allegedly executed in December 2016 but not recorded until October 2017—ten years after the alleged foreclosure sale.

---

[1]    The IRS also executed a certificate of sale of seized property showing JAB as the taxpayer and describing the property sold as the same property described in the general warranty deed that Bishop conveyed to JAB.

4

After Bishop recorded the Substitute Trustee's Deed, the Pates counterclaimed and cross-claimed against Bishop; K. M. Bishop, individually and as the substitute trustee; and David H. Hamilton, individually and as the Trust's trustee. The Pates alleged that the back-dated Substitute Trustee's Deed created a cloud on the title of their Property that should be removed. They also asked for declarations that the Substitute Trustee's Deed was invalid and they owned the Property.

Four years into litigation, in June 2021, Bishop recorded a deed of trust ("2021 Deed of Trust") stating that the Trust owed him $130,000 for his legal services and expenses in the lawsuit and that such funds were due within the next 90 days. The 2021 Deed of Trust was secured by the Property.

Six months later, in January 2022, Bishop recorded a trustee's deed ("2022 Trustee's Deed") stating the Trust had defaulted on its note, the Property was posted for foreclosure, and Bishop was the highest bidder at the foreclosure sale. Bishop then counterclaimed against the Pates for trespass to try title and declaratory judgment based on his allegations that he owned the Property and that the 2021 Deed of Trust and 2022 Trustee's Deed "wiped out" any claim by the Pates. He requested a "declaratory judgment that the quitclaim deed from the [IRS] to the Pates gave them no interest in the [P]roperty."

5

## D.     Summary judgment proceedings.

The parties' competing claims to the Property were disposed of in two summary judgments.

First, the Pates moved for summary judgment on (1) the Trust's trespass to try title claim; (2) their affirmative defenses against the Trust's declaratory judgment claim; (3) their claim to remove the cloud created by the Substitute Trustee's Deed from their title to the Property; and (4) their claims for statutory and common-law fraud, breach of warranty of title, declaratory judgment, filing of fraudulent liens, and conspiracy to defraud. The Trust filed a competing summary judgment motion, arguing that no evidence supported the causes of action on which the Pates had moved for summary judgment. After a hearing, the trial court denied the Trust's motion and partially granted the Pates' motion. The trial court dismissed the Trust's claims against the Pates, granted the Pates' counterclaim to remove the Substitute Trustee's Deed as a cloud from title of the Property, declared the Substitute Trustee's Deed void, and found that the Pates owned the Property.[2]

Second, the Pates moved for summary judgment on Bishop's trespass to try title and declaratory judgment claims against them. Bishop did not respond. During

---

[2]     The Trust does not appeal and waives any complaints. *Zive v. Sandberg*, 610 S.W.3d 44, 50 (Tex. App.—Dallas 2020) (noting the general rule that "an appellate reversal favoring an appealing party does not justify reversing the judgment as to other parties who did not appeal"), *aff'd*, 644 S.W.3d 169 (Tex. 2022).

6

the hearing on the motion, the Pates non-suited their remaining claims. The trial court, in its final judgment, (1) incorporated its findings from the first summary judgment order, (2) granted the Pates' second summary judgment motion and dismissed Bishop's claims against the Pates, (3) found no genuine issue of material fact as to the Pates' counterclaim to remove the cloud created by the 2021 Deed of Trust and 2022 Trustee's Deed, and (4) declared the two instruments void.

Bishop timely appealed.

## Summary Judgment

On appeal, we review the trial court's summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Summary judgment is appropriate when a movant shows that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). A matter is conclusively established if reasonable persons could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

## A. The Pates' right to summary judgment on their claim to remove cloud from title.

As the Pates acknowledged in their first summary judgment motion, to succeed on their suit to remove cloud, they must show "(1) an interest in a specific

7

property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Lil C Ranch, LLC v. Ridgefield Eagle Ford Mins., LLC*, No. 14-21-00285-CV, 2023 WL 2386940, at *8 (Tex. App.—Houston [14th Dist.] Mar. 7, 2023, no pet.) (mem. op.); *see also Brumley v. McDuff*, 616 S.W.3d 826, 834 (Tex. 2021). The Pates argued that their interest in the Property was established, their title was affected by the back-dated Substitute Trustee Deed, and that while the Substitute Trustee Deed "may be valid on its face without reference to the entirety of the real property records[,] . . . it is invalid under the property recording laws of the State of Texas."[3]

### 1. Nature of proceeding.

Bishop argues that the trial court erred in "granting summary judgment based on the Declaratory Judgment Act" because the Act "cannot be used to determine title to real property," and the Pates, instead, needed to bring a trespass to try title action under Chapter 22 of the Property Code. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.003–.004; *see also See* TEX. PROP. CODE § 22.001.

---

[3] Bishop complains that the Pates' first summary judgment motion "violated Rule 166a(a) of the Texas Rules of Civil Procedure" but he does not adequately brief the issue. *See* TEX. R. APP. P. 38.1(f)–(i). Because Bishop does not provide any argument, record citations, or authority, the issue is waived. *See id.*; *Guimaraes v. Brann*, 562 S.W.3d 521, 545 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("A brief that does not contain citations to appropriate authorities and to the record for a given issue waives that issue.").

We first observe that Bishop failed to file special exceptions or assert this complaint in the trial court. TEX. R. CIV. P. 91; *Brumley*, 616 S.W.3d at 831 ("The proper response to a legally or factually infirm pleading is to file special exceptions objecting to the pleading."); *see also* TEX. R. APP. P. 33.1 (timely complaint to the trial court is a prerequisite to appellate review). A complaint about the failure to assert a trespass to try title action instead of a declaratory judgment action is waived if not raised in the trial court. *Mid Pac Portfolio, LLC v. Welch*, No. 01-15-00404-CV, 2016 WL 828150, at *3 (Tex. App.—Houston [1st Dist.] Mar. 3, 2016, no pet.) (mem. op.) (recognizing that failure to complain about the use of declaratory proceeding to adjudicate title waives complaint on appeal); *Buckingham v. McAfee*, 393 S.W.3d 372, 375 (Tex. App.—Amarillo 2012, pet. denied) (same).

A suit to remove cloud from title—also known as a suit to quiet title—relies on the invalidity of the defendant's claim to the property. *Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Traditionally, a superior title holder seeks to remove a challenge to that title in a suit to remove cloud. *Brumley*, 616 S.W.3d at 834. The claim enables a "holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Gordon*, 352 S.W.3d at 42 (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. App.—Waco 1980, writ ref'd n.r.e.)). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid,

9

would affect or impair the title of the owner of the property." *Id.* (citing *Hahn*, 321 S.W.3d at 531). If successful, the defendant's claim to title is declared invalid or ineffective. *Id.*

When a claimant simultaneously brings an action to remove cloud from title and for declaratory relief, and the two claims "are based on the same facts and request similar relief," the claims are "treated as one suit to quiet title." *Gordon*, 352 S.W.3d at 47 n.1 (citing *Sw. Guar. Tr. Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). So, we analyze the Pates' claims to remove cloud from title and declaratory judgment as one suit to remove cloud from title. *Id.*

Rather than seeking to clear a problem in the chain of title or to recover possession of the Property, the Pates argued that their interest in the property was established by the chain of title and that they were seeking to remove the cloud on their title. *See Brumley*, 616 S.W.3d at 835; *see also Offord v. Carson*, No. 01-19-00815-CV, 2021 WL 3358023, at *6 (Tex. App.—Houston [1st Dist.] Aug. 3, 2021, no pet.) (mem. op.). The Pates did not seek ownership of the Property. Instead, they argued that, as the rightful title holders, they were entitled to have the invalid Substitute Trustee's Deed removed as a cloud on their title. *Compare Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018) (stating trespass to try title claim was procedurally proper "when the claimant is seeking to establish or obtain the

claimant's ownership or possessory right in the land at issue"), *with Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (stating plaintiff in quiet title claim must prove, as matter of law, a right of ownership and that defendant's adverse claim is cloud on title that equity will remove). The Pates' suit was based on the invalidity of the Trust's and Bishop's claims to the Property, and they "sought the declaration of [their] own ownership rights only as a result of the removal of the cloud on title." *Offord*, 2021 WL 3358023, at *6.

Considering (1) the substance of the Pates' pleadings, (2) Bishop's failure to file special exceptions, and (3) Bishop's failure to obtain a ruling on whether the Pates needed to bring a trespass to try title action, we reject Bishop's argument that the trial court erred in granting summary judgment because the Pates filed the wrong action. We overrule this issue.

### 2. The Pates' title and their standing to bring claim to remove cloud from title.

Bishop also argues that the Pates lacked standing to challenge the Substitute Trustee's Deed, regardless of when it was filed, and that a genuine issue of material fact exists as to whether the Pates had an interest in the Property. The Pates respond that the trial court did not err in finding that they had standing to assert their claim to remove cloud because they established their interest in the Property. Because the two issues overlap, we analyze them together.

11

A plaintiff has standing to bring a suit to remove cloud from title "when they can show a justiciable interest in the property." *Alvarado v. Alvarado*, No. 13-00-690-CV, 2002 WL 1072067, at \*3 (Tex. App.—Corpus Christi–Edinburg May 30, 2002, pet. denied) (not designated for publication) (citing *Bell*, 606 S.W.2d at 953 ("A suit to quiet title or to remove a cloud can be maintained only by a person owning an interest in the property involved.")). "A party may establish its interest by one of four methods: (1) title emanating from its sovereignty over the soil; (2) superior title emanating from both parties' receipt of title from a common source; (3) adverse possession; or (4) possession of the land prior to the other party's possession." *Id.* Whether the Pates had standing to bring their claim to remove cloud depends on whether they established an interest in the Property.

Bishop argues that "there was no summary judgment evidence that [the Pates] ever owned an interest" in the Property. We disagree. The Pates established their interest in the Property as "shown in the chain of title starting with the Bishop General Warranty Deed to [JAB] . . . followed by the IRS lien filed in the real property records against all property owned by [JAB] . . . followed by the IRS deed of interest of JAB to the Pates." Therefore, we conclude the Pates established an interest in the Property, creating standing to bring their claim to remove cloud from title. We overrule these two issues.

### 3. Validity of the Substitute Trustee's Deed.

Having concluded that the Pates had standing to assert their claim to remove cloud, we now analyze whether the Substitute Trustee's Deed (1) affects the Pates' title to the Property and (2) is invalid or unenforceable. *See Lil C Ranch*, 2023 WL 2386940, at *8. The Pates argued that although the Substitute Trustee's Deed "may be valid on its face without reference to the entirety of the real property records . . . it is invalid under the property recording laws of the State of Texas." The Pates provided several arguments against the validity of the Substitute Trustee's Deed, none of which Bishop addresses on appeal.

Instead, in what we interpret as a challenge to these two elements, Bishop argues that the Pates contended that he "filed a fraudulent claim" against the Property in violation of Chapter 12 of the Texas Civil Practice and Remedies Code but did not support that contention with summary judgment evidence. *See* TEX. CIV. PRAC. & REM. CODE §§ 12.001–.007. The record does not support Bishop's argument.

The Pates did not assert a Chapter 12 violation as a reason why the cloud from title should be removed or why the Substitute Trustee's Deed was invalid. Instead, the Pates moved for summary judgment in their first motion on their separate counterclaim against Bishop and the Trust for allegedly filing fraudulent liens in violation of Chapter 12. *See id.* § 12.001. While the trial court partially granted the Pates' first summary judgment motion, it did not grant the Pates any relief on this

13

claim. The Pates later voluntarily nonsuited this claim during the hearing on their second summary judgment motion. Accordingly, this issue is overruled.

Bishop does not grapple with any of the Pates' arguments on why the Substitute Trustee's Deed was invalid. *See Duaz v. Valdez*, 571 S.W.3d 795, 805 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("If the trial court does not specify the basis for granting a summary judgment, the appealing party must challenge all the grounds that support the judgment. . . . [W]e will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment should have been granted."). Bishop has therefore waived this issue through inadequate briefing. *See* TEX. R. APP. P. 38.1(f), (h), (i).

## B. The Pates' right to summary judgment on Bishop's trespass to try title and declaratory judgment claims.

In their second motion, the Pates moved for traditional summary judgment on Bishop's trespass to try title and declaratory judgment claims against them. Bishop did not respond to the motion. The final judgment granted the motion in the Pates' favor, finding

> no genuine issue of material fact as to Bishop's claims against [the Pates] for trespass to try title for the reason that Bishop cannot prove his title based upon the strength of his own title in that his title is derivative of the title of [the Trust] in the disputed [P]roperty, which the Court has heretofore ruled upon and found to be inferior to the claims of the [Pates] . . . [and] no genuine issue of material fact as to Bishop's claims for declaratory judgment and for attorney's fees.

14

The final judgment also found "no genuine issue of material fact as to [the Pates'] counterclaim to remove the cloud, created by the subsequent [2021 Deed of Trust] and resulting [2022 Trustee's Deed]," from the Property and declared the 2021 Deed of Trust and 2022 Trustee's Deed void.

"The trial court may not grant a summary judgment by default for lack of an answer or response to the motion by the non-movant when the movant's summary judgment proof is legally insufficient." *City of Hous. v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). That is, a movant is still required to conclusively prove all essential elements of its causes of action or defenses, even if no response is filed. *Id.* And a nonmovant need not respond to the motion "to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment." *Id.*

Here, however, Bishop does not challenge the trial court's dismissal of his claims, granting of the Pates' claim to remove cloud of title created by the 2021 Deed of Trust and 2022 Trustee's Deed, or declaration that the 2021 Deed of Trust and 2022 Trustee's Deed are void in his original appellate brief. *See* TEX. R. APP. P. 38.1(f), (h), (i). In his reply brief, he briefly challenges these rulings for the first time. "The Texas Rules of Appellate Procedure do not allow the inclusion of a new issue in a reply brief." *Fallon v. Univ. of Tex. MD Anderson Cancer Ctr.*, 586 S.W.3d 37, 58 n.17 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also Brown v. Green*,

15

302 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2009, no pet.). An appellant is likewise not allowed "to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised in the appellant's opening brief." *Miner Dederick Constr., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 471 n.3 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Even if not a "new issue," Bishop does not provide the Court with any analysis, discussion, record citations, or legal support for his assertions that the trial court erred in granting summary judgment on these points in his reply brief. *See* TEX. R. APP. P. 38.1(f)–(i); *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.) (considering issue raised for first time in reply brief because appellee "fully argued" the issue in its brief and appellants merely replied). Bishop has therefore waived this issue through inadequate briefing. *See Guimaraes v. Brann*, 562 S.W.3d 521, 545 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("A brief that does not contain citations to appropriate authorities and to the record for a given issue waives that issue."); *see also Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied) (discussing appellate courts cannot remedy deficiencies in appellate briefs).

## C. The associate judge.

We analyze Bishop's last two issues together.

## 1. The associate judge's authority.

Bishop objected to an associate judge presiding over the two summary judgment proceedings and questions on appeal whether "an associate judge [has] the power to grant a motion for summary judgment over the written objection of one of the parties." But Bishop's appellate brief contains no argument or authority supporting his position. The Pates respond that Bishop waived the issue by not briefing it.

An appellant's brief must "state concisely and without argument the facts pertinent to the issues or points presented," "be supported by record references," and "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(f)–(g), (i). Bishop has not provided any argument, authority, or record citations to support his contention that the associate judge should not have presided over the summary judgment proceedings. *Guimaraes*, 562 S.W.3d at 545.

Unless limited by a referral order, civil associate judges may conduct hearings, hear evidence, make findings of fact on evidence, formulate conclusions of law, and recommend the rulings, orders, and judgments to be rendered. TEX. GOV'T CODE § 54A.108(a) (addressing powers of civil associate judge). The record does not reflect that the associate judge's authority was limited by any referral order. Bishop has also provided no authority to support his objection to the associate judge

17

presiding over the summary judgment proceedings. Nor have we found any. We overrule this issue.

## D. De novo hearings on the associate judge's rulings.

"A party may request a de novo hearing before the referring court by filing with the clerk of the referring court a written request not later than the seventh working day after the date the party receives notice of the substance of the associate judge's decision as provided by Section 54A.111." TEX. GOV'T CODE § 54A.115(a). Section 54A.111 requires an associate judge to "notify each attorney participating in the hearing of [their] decision" but gives no notification timeframe or specified method of notification. *Id.* § 54A.111(a).

### 1. The sanctions order.

In June 2021, the associate judge sanctioned Bishop. A month later, Bishop requested a de novo hearing of the sanctions. Bishop contends on appeal that the trial court erred by never ruling on his hearing request.

A de novo hearing of an associate judge's ruling is mandatory when properly requested. *See id.* § 54A.115(e) ("The referring court, after notice to the parties, shall hold a de novo hearing not later than the 30th day after the date the initial request for a de novo hearing was filed . . . ."). Bishop argued in the trial court that he timely requested a de novo hearing because "the [sanctions] order signed on June 10, 2021 was not delivered to [him] until in open court on June 28, 2021." Yet Bishop argues

18

on appeal that the sanctions order "was never sent to [him] by the District Clerk or by the Associate Judge."

Bishop did not attach any evidence to his request for a de novo hearing to establish the timeliness of the request, therefore we cannot determine whether Bishop complied with Government Code Section 54A.115(a). *See id.* § 54A.115(a) (requiring requests for a de novo hearing be filed no later than the seventh working day after the party receives notice of the substance of the associate judge's decision). Bishop also does not provide any record citations to support his argument, as required by the appellate rules. TEX. R. APP. P. 38.1(i) (appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Because Bishop failed to provide record citations establishing when he received notice of the sanction order, and our review of the appellate record does not reflect when Bishop was notified, by service or otherwise, we overrule this issue. *See Guimaraes*, 562 S.W.3d at 545.

### 2. The first summary judgment order.

Bishop also requested a de novo hearing of the first summary judgment order six months after it was signed. He argued that the request was timely because the associate judge still had not notified him of their decision "by any method." *See* TEX. GOV'T CODE § 54A.111(a). Bishop claimed that he first learned of the order on August 5, 2022, six months after it was signed, when he downloaded it from the

clerk's website. He argues on appeal that he did not receive a de novo hearing and that his request was denied instead. The Pates respond that Bishop's assertion is inaccurate because the court did conduct a de novo hearing.

On September 16, 2022, the referring judge denied Bishop's request to set aside the first summary judgment order. The order reflected that on "September 13, 2022, the Court heard George Bishop's Notice of Appeal" and, "[a]fter due consideration of the pleadings, Bishop's Motion, the Response, the arguments of counsel and the evidence submitted at the hearing," Bishop's appeal was dismissed. Because the record reflects that the trial court conducted a de novo hearing on the first summary judgment order, this issue is overruled.

### 3. The final judgment.

Lastly, Bishop requested a de novo hearing on the Pates' second summary judgment motion. Bishop argues on appeal that his request was "ignored," but the request was premature because the trial court had not yet ruled on the second summary judgment motion. Instead of re-requesting a de novo hearing after the motion was granted, Bishop immediately filed this appeal. Because Bishop did not comply with Section 54A.115 in requesting a de novo hearing, we overrule this issue. *See* TEX. GOV'T CODE § 54A.115 (request for de novo hearing must be filed within seven days after receiving notice of associate judge's decision).

## Conclusion

We affirm the judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.